IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **HAWAIIWEB, INC. and**<br>**DAVID DIETERLE,**<br><br>          **Plaintiffs,**<br><br>    **v.**<br><br>**EXPERIENCE HAWAII, INC.,**<br>**d/b/a Experience Hawaii Group,**<br><br>          **Defendant.** | **1:16-cv-00405-WSD** |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Hawaiiweb, Inc. and David

Dieterle's (collectively, "Plaintiffs") Motion for Default Judgment [10].

**I.    BACKGROUND**

**A.    Facts**

Plaintiff Hawaiiweb, Inc. ("Hawaiiweb") is a Delaware corporation founded

by Plaintiff Dieterle ("Dieterle") in 1999.  (Compl. [1] ¶ 8).  Hawaiiweb was in the

business of providing tourism information to travelers visiting Hawaii, and it

owned and operated a website, www.hawaiiweb.com ("the Website").  (Id. ¶¶ 9,

11).  The Website provided "information on tours of secluded waterfalls, hiking

trails, and historic places such as lighthouses."  (Id. ¶ 10).  The Website contained

Dieterle's "rare photographs of waterfalls, hiking trails, and historic places" around Kauai, Hawaii, as well as his writings describing those locations.  (Id. ¶¶ 12-13).

In September 2008, Dieterle submitted his photographs as a collective work[1] to the United States Copyright Office and obtained a copyright certification for the photographs (Registration No. VA0001646797).[2]  (Id. ¶ 14).  The photographs were publicly displayed on the Website.  (Id. ¶ 16).

In 2014, Defendant Experience Hawaii, Inc. d/b/a Experience Hawaii Group ("Experience Hawaii") contacted Dieterle to acquire Hawaiiweb.  (Id. ¶ 19).  On April 28, 2014, the parties entered into a Domain Name Purchase and Transfer Agreement ("Purchase Agreement").  (Id. ¶ 21).  Under the Purchase Agreement, Hawaiiweb agreed to transfer to Experience Hawaii the "rights, title, and interest in and to" the Internet domain name hawaiiweb.com, "the look and feel" of the Website, "any and all trademarks and trade names," and "any goodwill associated therewith" (collectively referred to in the Purchase Agreement as the "Domain Name").  (Id. ¶ 22; Purchase Agreement [1.2] ¶ 1 at 1).  Under the Purchase

---

[1]  Plaintiffs attached a copy of its copyright registration record from the Library of Congress Catalog.  ([1.1]).  According to the copyright registration record, the collection contains fifteen photographs.  (Id.).

[2]  Throughout their submissions, Plaintiffs referred to registration number VA000<u>2</u>646797.  ([1]; [10.1]) (underlining added).  The Court assumes that Plaintiffs meant VA000<u>1</u>646797 as evidenced in the copyright registration record.

Agreement, the purchase price was "not to exceed one hundred fifteen thousand ($115,000) dollars, and not less than ninety thousand ($90,000.00) dollars."  ([1] ¶ 22).  Experience Hawaii agreed to pay "an earnest money deposit to Hawaiiweb of forty thousand ($40,000) dollars," (id. ¶ 25), financing the remaining amount by executing a Non-Recourse Secured Promissory Note ("Promissory Note").  (Id. ¶ 26; Promissory Note [1.2] at 8).  The Promissory Note was executed contemporaneously with the Purchase Agreement.

The Purchase Agreement and the Promissory Note require Experience Hawaii to make monthly payments "in an amount equal to $0.07 (07/100 U.S. Dollars)" per unique visitor session as tracked by Google Analytics for the previous calendar month.  ([1] ¶¶ 23, 26; Purchase Agreement [1.2] ¶ 3 at 2; Promissory Note [1.2] ¶ 2 at 8).  Each monthly payment is capped at $3,125 but cannot be less than $2,083.  (Id.).  "The non-payment, within thirty (30) calendar days," of any of the required monthly payment constitutes a default under the Promissory Note.  (Promissory Note [1.2] ¶ 6(a) at 9).

On May 1, 2015, Experience Hawaii was required to start its monthly payments.[3]  ([1] ¶ 25).  When Experience Hawaii "missed several payments,"

---

[3]     Experience Hawaii made the earnest money deposit required by the Purchase Agreement.  ([1] ¶ 25).

Hawaiiweb gave Experience Hawaii time to cure the defaults.  (Id. ¶ 32).  By August 2015, Experience Hawaii failed to cure.  (Id. ¶ 33).  In view of Experience Hawaii's failure to meet its monthly payment obligation, Hawaiiweb exercised its rights under the acceleration clause in the Promissory Note by accelerating all of the unpaid amounts and requiring them to be paid.  (Id. ¶ 33; Promissory Note [1.2] ¶ 6 at 10).  Hawaiiweb also repossessed the Domain Name.  ([1] ¶ 33).

The Complaint alleges that Experience Hawaii revised the computer code for the Website and "effectively rendered it useless."  (Id. ¶ 34).  Experience Hawaii also refused to grant Hawaiiweb access to the Google Analytics account associated with the Website.  (Id. ¶ 35).

After defaulting on the Promissory Note, Experience Hawaii posted one of Dieterle's copyrighted photographs ("the Photograph")[4] on its own website (http://www.experiencehawaii.com/blog/kauai/kilauea-lighthouse-kauai).[5]  (Id.

---

[4]     The Complaint alleges that it was "a photograph located at http://www.experiencehwaii.com/blog/kauai/kilauea-lighthouse-kauai."  ([1] ¶ 39). Defendant's website is no longer available, and Plaintiffs did not provide a screenshot of the offending website.  Although the Plaintiffs did not identify the specific copyrighted photograph, the Court infers that it was one of the four photographs of the Kilauea lighthouse.  (See [1.1]).
[5]     The Complaint also alleges that Experience Hawaii "used identical written content that Mr. Dieterle drafted to describe various tourist attractions in Hawaii that was originally posted on www.hawaiiweb.com."  ([1] ¶ 40).

¶ 39).  Experience Hawaii cropped the Photograph to remove Plaintiffs' copyright notice.  (Id. ¶ 40).

In December 2015, Hawaiiweb sent Experience Hawaii a cease-and-desist notice demanding that Experience Hawaii remove all copyrighted content from its website.  (Id. ¶ 44).  Experience Hawaii refused.  (Id. ¶ 45).

B.    Procedural History

On February 10, 2016, Plaintiffs filed this action for breach of contract (Count I) and copyright infringement (Count II).  (Id.).  In Count I, Plaintiffs request the following relief:  (1) damages, including consequential and incidental damages, and (2) Plaintiffs' reasonable attorney's fees and costs.  (Id. ¶ 37).  In Count II, Plaintiffs request (1) statutory damages under 17 U.S.C. § 504(c), (2) attorney's fees and costs under 17 U.S.C. § 505, and (3) injunctive relief under 17 U.S.C. § 502.  (Id. ¶ 47).

On February 25, Plaintiffs served the Complaint on Defendant.  ([5]).  On March 16, 2016, Defendant, with Plaintiffs' consent, moved for an extension of time to file a response to the Complaint.  ([6]).  The Court granted an extension to April 15, 2016.

On April 5, 2016, Defendant and its counsel agreed that Defendant's Counsel should withdraw from its representation of Defendant.  ([11] at 1).  On

April 7, 2016, Defendant's Counsel informed Plaintiffs' counsel of the withdrawal agreement.  (Id. at 2).

On April 15, 2016, the date Defendant's response to the Complaint was due, Defendant's Counsel delivered to Defendant their notice of intent to request permission from the Court to withdraw as Defendant's counsel.  Later that same day, Defendant's Counsel filed their First Motion to Withdraw [7] (the "Withdrawal Motion").

On April 18, 2016, Plaintiffs filed their Motion for Clerk's Default [8] based on Defendant's failure to respond to the Complaint by April 15, 2016.  The Clerk entered default against Defendant later that day.

On April 20, 2016, the Court denied [9] Defendant's Counsel's Withdrawal Motion for failure to comply with Local Rule 83.1(E).

On May 2, 2016, Plaintiffs filed their Motion for Default Judgment [10].

On May 3, 2016, Defendant's Counsel filed their Second Motion to Withdraw [11] (the "Second Withdrawal Motion").  On May 11, 2016, the Second Withdrawal Motion was granted, and a copy of the order was sent to Defendant.  In entering the order to withdrawal, Defendant was admonished that because it is a corporation it had to be represented in this action by counsel.  Defendant was ordered to "provide the Court . . . with the name, address, and telephone number of

6

its new counsel," and that counsel "shall file a notice of appearance" by June 1, 2016.  ([12] at 4).  Because Defendant was required to retain new counsel, the Court extended to June 14, 2016, Defendant's deadline for responding to Plaintiff's Motion for Default Judgment.  (Id.).  Defendant has failed to respond to the motion, and counsel has not appeared on its behalf.

## II.   DISCUSSION

A.   Legal Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

> (1)   ***By the Clerk***.  If the plaintiff's claim is for a sum certain or a sum that can be made certain  by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2)    ***By the Court***.  In all other cases, the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
> (A)   conduct an accounting;
> (B)   determine the amount of damages;
> (C)   establish the truth of any allegation by evidence; or
> (D)   investigate any other matter.

Fed. R. Civ. P. 55(b).

7

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

8

B.    <u>Breach of Contract (Count I)</u>

Under Delaware law,[6] "to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  <u>VLIW Tech., LLC v. Hewlett–Packard Co.</u>, 840 A.2d 606, 612 (Del. 2003); <u>see also</u> <u>H–M Wexford LLC v. Encorp, Inc.</u>, 832 A.2d 129, 140 (Del. Ch. 2003).

Here, the Clerk has entered default against Defendant.  The legal effect of Defendant's default is that it has now admitted the facts alleged in the Complaint.  Having carefully reviewed the Complaint and its allegations of facts, the Court

---

[6]    The Court applies the law required by Georgia's choice-of-law rules, so long as the application does not violate the parties' due process rights.  <u>See</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 821-22 (1985); <u>Keener v. Convergys Corp.</u>, 342 F.3d 1264, 1267-68 (11th Cir. 2003); <u>Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.</u>, 92 F.3d 1110, 1115 (11th Cir. 1996) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)); <u>see also</u> <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 672 F.3d 155, 157 (2d Cir. 2012) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." (internal quotation omitted)).  Unless the chosen law is contrary to Georgia public policy, Georgia courts generally accept choice-of-law provisions contained in contracts.  <u>See</u> <u>Convergys Corp. v. Keener</u>, 582 S.E.2d 84, 85-86 (Ga. 2003).

The Purchase Agreement contains a choice-of-law provision calling for the application of Delaware law to the interpretation and enforcement of the agreement.  (Purchase Agreement [1.2] ¶ 9(f) at 5).  Accordingly, the Court applies Delaware law to the breach-of-contract claim in this case.

concludes that Plaintiffs have sufficiently alleged all of the elements required to

prove a breach of the Purchase Agreement and the Promissory Note.

1.    Remedies for Breach of Contract

Plaintiffs allege damages, including consequential and incidental damages,

and a recovery of reasonable attorney's fees and costs, as a result of Defendant's

contract breach.[7]  ([1] ¶ 37).

The Court may grant default judgment and award damages without a hearing

if "the amount claimed is a liquidated sum or one capable of mathematical

calculation."  Adolph Coors Co. v. Movement Against Racism and the Klan,

777 F.2d 1538, 1543 (11th Cir. 1985); United Artists Corp. v. Freeman, 605 F.2d

854, 857 (5th Cir.1979).  "While a party in default admits the well-pleaded

---

[7]      Under the Purchase Agreement, "the prevailing party in litigation is entitled
to recover his reasonable attorneys' fees and costs from the non-prevailing party."
(Purchase Agreement [1.2] ¶ 9(e) at 5).  Delaware law permits courts to consider
such fees.  See Casson v. Nationwide Ins. Co., 455 A.2d 361, 370 (Del. Super. Ct.
1982) ("In an action at law, a court may not order the payment of attorney's fees as
part of costs to be paid by the losing party unless the payment of such fees is
authorized by some provision of statute or contract.").
        Because Federal copyright law grants Plaintiffs another independent basis
for recovery of full costs and reasonable attorney's fee, the Court defers its
consideration of costs and attorney's fee until the Court addresses the merits of
Plaintiffs' copyright claim later in this opinion.  See 17 U.S.C. § 505 ("In any civil
action under this title, the court in its discretion may allow the recovery of full
costs . . . . [T]he court may also award a reasonable attorney's fee to the prevailing
party as part of the costs.").

allegations of the complaint against it, a plaintiff cannot satisfy the certainty amount by simply requesting a specific amount.  He must also establish that the amount is reasonable under the circumstances."  Elektra Entm't Grp., Inc. v. Jensen, No. 1:07-CV-0054-JOF, 2007 WL 2376301, at *2 (N.D. Ga. 2007) (internal quotation omitted); see also Adolph Coors, 777 F.2d at 1544 ("Damages may be awarded only if the record adequately reflects the basis for award.").  The Court is obligated to assure (i) there is a proper basis for the damage award it enters, and (ii) that damages are not awarded solely as the result of an unrepresented defendant's failure to respond.  Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1265 (11th Cir. 2003).

Plaintiffs' Complaint here alleges that "Experience Hawaii failed to pay the remaining principal sum due of sixty-three thousand seven hundred fifty ($63,750) dollars, plus prejudgment interest," under the Purchase Agreement and Promissory Note.  ([1] ¶ 37).  The Complaint requests breach-of-contract damages in the amount of $63,750.  The question is whether there is a proper basis from which the Court can award this amount.  The Plaintiffs have failed to establish that they are

11

entitled to the damages requested and, if they are, they have not established that the amount of their claim for breach of contract is reasonable.[8]

Compensation for breach of contract usually is limited to that amount that "will place [plaintiff] in the same position that he would have been in if the contract had been performed.  The measure of damages is the loss actually sustained as a result of the breach of the contract."  CIT Tech. Fin. Servs. v. Owen Printing Dover, Inc., No. CIV.A.06C-08-047 WLW, 2008 WL 2586683, at *5 (Del. Super. Ct. 2008) (quoting J.J. White, Inc. v. Metropolitan Merchandise Mart, 107 A.2d 892, 894 (Del. Super. Ct. 1954)).  Under Delaware law, "exemplary damages are not recoverable in an action for breach of contract."  Id. at *5.

---

[8]     From May 1, 2015, to August 1, 2015, (i.e., the date Defendant was to begin monthly payments to the date Defendant failed to cure the default), Defendant was to make four payments.  Plaintiffs failed to provide the Court with any evidence as to how Defendant failed "to pay Hawaiiweb the agreed upon amounts" besides that Defendant "missed several payments."  (Id. ¶¶ 31-32).  Plaintiffs do not offer any evidence as to what the actual monthly payments were, or how many payments were actually made or in what amount, or which payments remain outstanding. Dieterle's affidavit merely repeats verbatim the alleged facts in the Complaint and does not provide support showing the reasonableness of the damages requested. This lack of evidence does not allow the Court to determine the reasonableness of Plaintiffs' claimed damages request.  See also Dill v. Dill, No. K15L-02-003 JJC, 2016 WL 4127455, at *2 (Del. Super. Ct. 2016) ("To determine the amount of an award as to damages, the Court must first determine the date of default, or breach, because the timing of the breach is an issue that 'has implications for valuation and any potential interest accrual.'").  Under the scant facts provided here, the Court cannot determine the remaining principal sum that is due under the Promissory Note.

The Court notes first that the Promissory Note allows Hawaiiweb to accelerate the remaining principal balance of the note upon default.  The Promissory Note is a nonrecourse instrument secured by the Domain Name being purchased as collateral.  (Promissory Note [1.2] ¶¶ 6, 14 at 9-11).  The Promissory Note, being on a nonrecourse basis, means that Hawaiiweb may be limited to the collateral as compensation for any losses it suffered for breach of the Promissory Note.  See CNL-AB LLC v. E. Prop. Fund I SPE (MS Ref) LLC, No. CIVA6137-VCP, 2011 WL 353529, at *1 (Del. Ch. 2011) (Finance loans made on a nonrecourse basis means "that lenders are generally only able to look to their collateral to offset losses, while borrowers and their equity-holders are expressly exculpated from liability."); see also W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1356 n.2 (11th Cir. 1999) ("Nonrecourse debt is '[d]ebt secured by the property that it is used to purchase.  The purchaser of the property is not personally liable for the debt on default.  Rather, the creditor's recourse is to repossess the related property.'"), Ernest H. KEATTS v. Bank of Delaware, No. 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, 1984 WL 402530, at *1 (Del. Com. Pl. 1984) (Secured creditor may "retain the collateral in full satisfaction of the indebtedness," but failure to comply with the standards in Delaware Uniform Commercial Code, Article 9 "bars any deficiency judgment and results in recovery by the debtor of statutory damages."  (citing

Wilmington Trust Co. v. Conner, 414 A.2d 773 (Del. Supr. 1980))); Lamp Fair,

Inc. v. Perez-Ortiz, 888 F.2d 173, 174 (1st Cir. 1989) (holding that secured creditor

could not obtain deficiency judgment after it had elected to retain collateral).

   If Plaintiffs are entitled to recover the remaining principal due under the

Purchase Agreement and Promissory Note, they have not provided sufficient

evidence showing the amount allowed to be recovered.[9]  Generally, recovery of the

remaining principal would, they claim, restore Plaintiffs to the position as they

expected to be in if the Purchase Agreement was not breached.  Plaintiffs,

however, obtained value when they repossessed the Domain Name.  ([1] ¶¶ 33-34).

If the Court compensates Plaintiffs for the requested amount without reducing the

value of the repossessed Domain Name, Plaintiffs may be "placed in a better

position than expected" or are entitled.  CIT Tech. Fin. Servs., 2008 WL 2586683,

at *5.  The question is whether Plaintiffs can demand all unpaid payments due

under the Purchase Agreement and also benefit from the Domain Name's value—

whatever that may be.  Id. (finding that plaintiff cannot recover for unpaid

---

[9]    Plaintiffs assert that Hawaiiweb is "entitl[ed] . . . to accelerate the amounts
due and owing to it under the Promissory Note, *as well as* to retake possession of
www.hawaiiweb.com, its intellectual property, and goodwill."  ([1] ¶ 33 (emphasis
added); [10.1] ¶ 13).

payments and retake possession of the equipment); cf. Am. Energy Sys. of Washington, Inc. v. Galeano, Inc., No. CIV. A. 90A-11-001, 1991 WL 166117, at *3 (Del. Super. Ct. 1991) (In a Lease/Service Agreement, "a lessor cannot recover possession of an item and an amount representing accelerated rent.").  The Court was not presented with factual information upon which to determine reasonable damages, if they are allowed.

The Court, having read the submissions of the Plaintiffs, determines that a hearing is necessary before default judgment may be entered on Plaintiffs' breach-of-contract claim and, if so, in what amount.  Plaintiffs are required at the hearing to address and present evidence on the following issues:

1. whether Plaintiffs' contractual damages are limited to the collateral pledged for the nonrecourse Promissory Note;

2. the factual basis for the damages alleged;

3. the relationship between the damages alleged and the damages caused by Defendant to the Website and the Google Analytics account; and,

4. the basis for any consequential and incidental damages.

See S.E.C. v. Smyth, 420 F.3d 1225, 1231-32 (11th Cir. 2005) ("[I]f an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting

defendant must pay, those proceedings must be conducted before the judgment is entered." (quoting Lowe v. McGraw-Hill Cos., 361 F.3d 335, 339-40 (7th Cir. 2004))).

C.    Willful Copyright Infringement (Count II)

A party suing for copyright infringement must prove (1) ownership of an original copyrighted work and (2) copying of constituent elements of the original work.  Feist Publications, Inc. v. Rural Telephone Svc. Co., 499 U.S. 340, 361 (1991).  To satisfy the first element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)).  To satisfy the second element, the plaintiff must establish that the "alleged infringer actually copied plaintiff's copyrighted material."  Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010).

Both elements are met here because Defendant, by virtue of its default, admits the facts recited in Plaintiffs' allegations of fact.  First, Dieterle owns the Photograph he took of the Kilauea lighthouse.  ([1] ¶¶ 12, 14).  The Photograph was submitted as a part of a collective work to the United States Copyright Office, and the Copyright Office granted a registration number on September 4, 2008.  (Id.

16

¶ 14).  Second, in August 2015, Defendant copied the Photograph by placing the copyrighted photograph on its own website without permission.  (Id. ¶ 39).  In December 2015, Defendant, after receiving a cease-and-desist letter, failed to remove the Photograph from its website.  (Id. ¶ 44).  The Court finds that the Complaint states a claim for relief.

The Court further finds that Defendant willfully infringed Plaintiffs' copyright.  "Willfully, in the context of section 504(c)(2), means that the defendant knows his actions constitute an infringement; the actions need not have been malicious."  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 851 (11th Cir. 1990) (internal citations omitted); Olem Shoe Corp. v. Washington Shoe Corp., 591 F. App'x 873, 877 (11th Cir. 2015).[10]  It is evident that Defendant

---

[10]    The Olem court relied on In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed.Cir.2007) as support for its opinion that a reckless state of mind in a copyright case requires a showing of an "objectively high likelihood" that defendant infringed the copyright.  The Supreme Court recently overturned Seagate, finding that the Seagate test "is unduly rigid, and it impermissibly encumbers the statutory grant of discretion to district courts."  Halo Elecs., Inc. v. Pulse Elecs., Inc., — U.S. —, 136 S. Ct. 1923, 1932 (2016).  The Court rejected the "objectively reckless" portion of the Seagate test and found that "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  Id. at 1933.  Culpability for willful infringement purposes under patent law is "measured against the knowledge of the actor at the time of the challenged conduct," and enhanced damages is reserved for "egregious cases of misconduct beyond typical infringement."  Id. at 1933-34.

knew its actions constituted an infringement and acted willfully.  Defendant copied the Photograph after it had defaulted and after Plaintiffs had repossessed the Website.  Defendant posted the Photograph on its own website, not innocently, but after it cropped the Photograph to remove the copyright notice.  Defendant had the opportunity to cease and desist the infringing conduct, but refused to do so. Defendant's infringing acts were committed willfully.  See e.g., Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (collecting cases) (inferring that defendants willfully infringed plaintiffs' copyrights because of defendants' default).

Plaintiffs seek three forms of relief:  statutory damages, permanent injunction, and reasonable attorney's fees and costs.  ([1] ¶ 47).  The Court is required to determine the amount and character of damages because Plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default even if the well-pleaded facts in the Complaint are deemed admitted due to Defendant's failure to respond.  Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).

### 1.    Statutory Damages

A copyright owner whose copyright has been infringed may recover, at his election, either actual damages or statutory damages for the infringing activity.

17 U.S.C. § 504(a)-(c).  Courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is uniquely within the defaulting infringers' control.  <u>Microsoft Corp. v. McGee</u>, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (citing cases).

When a plaintiff in a copyright suit elects to recover statutory damages, the court may award, "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  <u>Id.</u> § 504(c)(1).  In a case where the court finds that infringement was committed willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  <u>Id.</u> § 504(c)(2).  Plaintiffs have elected statutory damages, in lieu of actual damages and profits.  ([10.1] ¶ 31).

Statutory damages are "not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered." <u>Clever Covers, Inc. v. Sw. Florida Storm Def., LLC</u>, 554 F. Supp. 2d 1303, 1312 (M.D. Fla. 2008) (internal quotations omitted) (citing <u>Peer Int'l Corp. v. Luna Records</u>, 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995)).  The facts in this case do not support awarding Plaintiffs' the $50,000 requested.  Although Plaintiffs alleged

that Defendant "used the photograph in commerce to promote its own business to generate ticket sales in its own tourism business and is now competing with Hawaiiweb for the same business from tourists," ([10.1] ¶ 30), Plaintiffs' request is unsupported by affidavits and provides no basis on which to base the enhanced award of $50.000.  Plaintiffs have not provided an estimation of the fair market value of the rights infringed, or of the possible revenue lost by Plaintiffs, or the typical licensing fee for use of Dieterle's copyrighted photograph.

In cases involving infringement of copyrighted photographs, other courts in our Circuit have awarded statutory damages of $5,000 to $15,000 for willful infringement.  See e.g., Falcon Enterprises, Inc. v. Monroe, No. 807-CV-201-T-23MAP, 2008 WL 4164596, at *3 (M.D. Fla. 2008) (awarding statutory damages of $5,000 for willful infringement of each copyrighted work); Lived in Images, Inc. v. Noble Paint & Trim, Inc., No. 6:15-CV-1221-ORL-40DAB, 2016 WL 791061, at *5 (M.D. Fla. 2016), report and recommendation adopted, No. 615-CV-1221-ORL-40DAB, 2016 WL 761029 (M.D. Fla. 2016) (finding that plaintiff generated income by licensing its photographs and awarding statutory damages of $10,000 for willful infringement of a copyrighted photograph); BWP Media USA Inc. v. A.R. Commc'ns, LLC, No. 6:14-CV-120-ORL-22KR, 2014 WL 5038590, at *4 (M.D. Fla. 2014) (awarding

20

statutory damages of $13,650 for willful infringement of 14 copyrighted

photographs, which was three times the licensing fee for the photographs); but see

BWP Media USA, Inc. v. Blue Wolf Media, LLC, No. 13-61189-CIV, 2014 WL

644747, at *3 (S.D. Fla. 2014) (finding no justification to award damages beyond

the statutory minimum of $750 per photograph because the complaint had few

details regarding the nature of infringement).[11]  Considering the nature of the

violation that it involved a single photograph depicting a physical location, and the

absence of further information about the use, the Court determines that a statutory

award of damages in the amount of $8,000 is reasonable, and is awarded.

---

[11]    Other courts also have awarded statutory damages close to this range.  See,
e.g., White v. Marshall, 771 F. Supp. 2d 952, 957 (E.D. Wis. 2011) (finding the
photographs had "significant marketing value" and awarding plaintiffs $10,000 for
each of the fourteen works infringed, plus an additional $10,000 for the willfulness
of the infringement three years after the licensing expired); Schmitt v. VAG Grp.,
Inc., No. CIV. 09-380-HU, 2010 WL 331782, at *6 (D. Or. 2010) (awarding $490
per image for the approximate 2.5 months defendants used the images after the
license expired, and enhancing the initial award by five times for defendants'
willful conduct for a total damages award of $9,800); Grady v. Nelson,
No. 12-CV-03004-RM-KMT, 2014 WL 7143852, at *9 (D. Colo. Dec. 15, 2014)
(awarding $7,000 for willful infringement of each copyrighted work for a total
award of $742,000 because defendant infringed 106 copyrighted works).  The
Court has found one case that granted the maximum statutory award of $30,000
per infringement.  See Grady v. Swisher, No. 11-CV-02880-WYD-KLM,
2014 WL 3562794, at *16 (D. Colo. 2014) (finding for the purpose of calculating
statutory damages, defendant's infringement of the 3259 photographs and videos
constitutes infringement of six works, and awarding statutory damages of $30,000
for infringement of each copyrighted work).

### 2.   Permanent Injunction

Plaintiffs seek an injunction to enjoin Defendant from infringing Plaintiffs' copyrighted photographs.  Under the Copyright Act, a plaintiff is entitled to injunctive relief in addition to monetary damages.  17 U.S.C. § 502(a).  Past copyright infringement and substantial likelihood of future infringements normally entitle the copyright holder to a permanent injunction.  Pac. & S. Co., Inc. v. Duncan, 744 F.2d 1490, 1499 (11th Cir.1984).  Plaintiffs have established that Defendant willfully infringed their copyright after being instructed in writing to cease its infringing conduct.  Defendant has not responded in this action.  Thus, the Court is satisfied that an equitable remedy is warranted and that entry of a permanent injunction is appropriate.

### 3.   Attorney's Fees and Costs

Plaintiffs seek to recover $4,680 in attorney's fees and $1,102.40 in costs. ([10.1] ¶ 34).  The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party" and "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

In the Eleventh Circuit, "the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The product of these two figures is the

lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve."  Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (considering the recovery of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988) (internal quotation marks and citations omitted).  The court may adjust the lodestar amount based upon the results obtained.  See Norman v. Housing Auth., 836 F.2d 1292, 1302 (11th Cir. 1988).

"A request for attorney's fees should not result in a second major litigation." Norman, 836 F.2d at 1303 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).  It is "perfectly proper to award attorney's fees based solely on affidavits in the record."  Id.  "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses . . . ."  Id. (citations omitted).  Evidentiary hearings are only necessary "where there [a]re disputes of fact, and where the written record [i]s not sufficiently clear to allow the trial court to resolve the disputes of fact."  Id.

The Court has reviewed the affidavit from Plaintiffs' counsel.  As a result of its review, the Court concludes that the request for attorney's fees and costs is based on legal services necessary to be performed to represent Plaintiffs here and is based on hourly timekeeper rates consistent with the hourly rates charged by

attorneys in this market for legal services of the type rendered here.  (See [10.3]

¶ 4).  The Court determines that attorney's fees in the amount of $4,680 are fair

and reasonable and that costs in the amount of $1,102.40, which amount includes

$400 for a filing fee and $702.40 for service of process in Hawaii, are also

reasonable.  ([10.3] ¶ 5).  Plaintiffs request for an award for costs and attorney's

fees for Defendant's breach of contract and copyright violations is granted.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court will hold a further evidentiary

hearing on Plaintiffs' damages for breach of contract, pursuant to Rule 55(b)(2) of

the Federal Rules of Civil Procedure.  The hearing will be held on February 7,

2017, at 1:00 p.m., in Courtroom 1705, Richard B. Russell Federal Building and

Courthouse, 75 Ted Turner Drive, S.W., Atlanta, GA 30303.  At the hearing, the

Plaintiffs shall show whether they are entitled to contractual damages and, if so, in

what amount.  Plaintiffs shall present evidence, if any, on the following issues:

(1) whether Plaintiffs' contractual damages are limited to the collateral pledged for

the nonrecourse Promissory Note; (2) the basis for the contractual damages

alleged; (3) the extent of damages caused by the Defendant to the website and the

Google Analytics account; and (4) the basis for any consequential and incidental damages.

**IT IS FURTHER ORDERED** that Plaintiffs be awarded statutory damages for Defendant's willful violation of Plaintiffs' copyright in the amount of $8,000.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded attorney's fees and costs for Defendant's breach of contract and copyright violation in the amount of $5,782.40.

**IT IS FURTHER ORDERED** that Defendant, and its directors, principals, officers, agents, servants, employees, representatives, successors, and assigns are **PERMANENTLY ENJOINED** from copying, distributing, or making any other infringing use of Plaintiff David Dieterle's copyright protected by Copyright Registration Number VA0001646797.

**SO ORDERED** this 27th day of January, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE