IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAWAIIWEB, INC. and
DAVID DIETERLE,

        Plaintiffs,

v.

EXPERIENCE HAWAII, INC.,
d/b/a Experience Hawaii Group,

        Defendant.

1:16-cv-00405-WSD

**OPINION AND ORDER**

This matter is before the Court following the February 7, 2017, evidentiary hearing on Plaintiffs Hawaiiweb, Inc. and David Dieterle's (collectively, "Plaintiffs") Motion for Default Judgment [10].

## I.    BACKGROUND

On February 10, 2016, Plaintiffs filed a Complaint [1] alleging that Defendant Experience Hawaii, Inc., d/b/a Experience Hawaii Group ("Experience Hawaii"), breached a contract (Count I) and willfully infringed Plaintiff Dieterle's ("Dieterle") copyrighted photograph (Count II). ([1]). On February 25, Plaintiffs served the Complaint on Defendant. ([5]).

On April 5, 2016, Defendant and its counsel agreed that Defendant's Counsel should withdraw from its representation of Defendant. ([11] at 1). On April 18, 2016, after Defendant failed to respond to the Complaint, Plaintiffs filed their Motion for Clerk's Default [8], and the Clerk entered default against Defendant later that day.

On May 2, 2016, Plaintiffs filed their Motion for Default Judgment [10]. On May 11, 2016, the Court granted Defendant's Counsel's Motion to Withdrawal [11], and a copy of the order was sent to Defendant. In entering the order to withdrawal, Defendant was admonished that because it is a corporation it had to be represented in this action by counsel. Defendant was ordered to "provide the Court . . . with the name, address, and telephone number of its new counsel," and that counsel "shall file a notice of appearance" by June 1, 2016. ([12] at 4). The Court then extended Defendant's deadline for responding to Plaintiff's Motion for Default Judgment to June 14, 2016. (Id.). Defendant has failed to respond to the motion, and counsel has not appeared on its behalf. On January 27, 2017, the Court considered [14] Plaintiffs' Motion for Default Judgment, entered judgment as to Defendant's willful violation of Plaintiffs' copyright, and awarded statutory damages and permanently enjoined Defendant from further infringing use of Plaintiffs' copyright. As to Plaintiffs' breach-of-contract claim, the Court

scheduled an evidentiary hearing to determine whether Plaintiffs are entitled to contractual damages and, if so, in what amount.

On February 7, 2017, the Court held an evidentiary hearing on Plaintiffs' Motion for Default Judgment. During the hearing, Dieterle testified on the factual basis for the damages alleged as well as the damages caused by Defendant to the Hawaiiweb website and the Google Analytics account. Plaintiffs further presented arguments as to why Plaintiffs' contractual damages are not limited to the domain name pledged for the nonrecourse Promissory Note.

## II.   DISCUSSION

"[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005) (internal quotation marks omitted)). If these well-pleaded allegations state a plausible claim for relief, a motion for default judgment is permitted but not required. See id. at 1244-46; cf. id. at 1244-45 ("Because of our 'strong policy of determining cases on their merits,' . . . default judgments are generally disfavored." (quoting In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003))). "The entry of a default judgment is committed to the discretion of the district court," Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert.

denied, 475 U.S. 1096 (1986)), and "the court, in its discretion, may require some proof of the facts that must be established in order to determine liability," 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2688 (3d ed. Apr. 2016 Update); see Wooten v. McDonald Transit Associates, Inc., 788 F.3d 490, 496-98 (5th Cir. 2015) (stating that, although plaintiff's allegations were sufficient under the pleading requirements, the district court was permitted to hold a "prove-up hearing" to establish the truth of the allegations by evidence and thus to determine whether default judgment should be granted).

The threshold issue remaining for Plaintiffs' breach-of-contract claim is whether Plaintiffs' contractual damages are limited to the collateral pledged for the nonrecourse Promissory Note. The Promissory Note was "secured by the Domain Name being purchased pursuant to the Domain Name Purchase and Transfer Agreement" ("Purchase Agreement"), "which shall be held in escrow by Escrow Agent until this Note is paid in full." (Promissory Note § 14 [1.2]). Because the Promissory Note itself does not supply the meaning of the language "Domain Name being purchased . . . [and] held in escrow," the Court looks to the Purchase Agreement and the Escrow Agreement for possible definitions. (See Purchase Agreement § 3.a.iv. [1.2] (The Purchase Agreement, Promissory Note, and Escrow Agreement were entered contemporaneously, and "the terms of the [Promissory

4

Note] are incorporated [in the Purchase Agreement] for all intents and purposes.")).  The Purchase Agreement defines the term "Domain Name" in two ways: (1) the Internet domain name hawaiiweb.com (Purchase Agreement, Background) and (2) the collection of the domain name, the look and feel of the website, the trademarks and trade names, and any goodwill associated (Purchase Agreement § 1).  And the Escrow Agreement defines the "Domain Names" as "the domain name(s) HawaiiWeb.com."  (Escrow Agreement § A [1.2]).

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."  Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1159 (Del. 2010) (quoting Twin City Fire Ins. Co. v. Delaware Racing Ass'n, 840 A.2d 624, 628 (Del. 2003); see also Rhone–Poulenc Basic Chem. Co., 616 A.2d at 1195 ("[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.").  If a contract is ambiguous, courts will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party.  Id.  The determination of ambiguity lies within the sole province of the court.  Id.

It is clear from the Purchase Agreement that Defendant received more than just the domain name hawaiiweb.com.[1]  Defendant's purchase, stated in the Purchase Agreement, includes, in addition to the domain name, the look and feel of the website associated with the domain name as well as any goodwill.  The website's look and feel is how the site looks to a user and how it feels when the user is interacting with it, and is defined by "the computer code on which Dieterle built the website."  (See id. ¶ 34).  The business goodwill represents an intangible asset that is associated with Hawaiiweb's tourism business, and the value of which was tracked by Hawaiiweb's Google Analytics account based on "the number of unique sessions by visitors to www.hawaiiweb.com."  (See id. ¶ 23).  Both the computer code and the Google Analytics account were transferred to Defendant.

The most reasonable interpretation of the term "Domain Name" as used in the Promissory Note, therefore, should include all assets listed in the Purchase Agreement, notwithstanding that the domain name hawaiiweb.com was the sole asset held in escrow until the sale price is paid in full.  This interpretation comports with the common conditional sales agreement where a buyer takes possession of an item, but the title and right of repossession remains with the seller until the buyer

---

[1]  Plaintiffs' Complaint alleges that Defendant purchased "Hawaiiweb" in order to "integrate [Hawaiiweb's] business model into Experience Hawaii."  ([1] ¶ 19).

6

pays the full purchase price.  Here, instead of the legal title being held in escrow, it was the domain name hawaiiweb.com that was held in escrow.  Although Plaintiffs have regained possession of the domain name, Defendant has failed to return the computer code of the website and the Google Analytics account associated with the domain name.  ([1] ¶¶ 34-35).  Because Plaintiffs only had a partial recovery, the Court concludes that Plaintiffs are entitled to damages in order to place Plaintiffs in the same position as they expected to be in.

The minimum sale price under the Purchase Agreement is $90,000.[2]  Plaintiffs have received $40,000 as earnest money.  The domain name, which is now in Plaintiffs' possession, without the computer code amounts to nominal value.  The Court determines that the contractual damages in the amount of $50,000 is reasonable, and is awarded.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs be awarded contractual damages for Defendant's breach of contract in the amount of $50,000.

---

[2]   Plaintiffs alleged that Defendant is liable for unpaid principal in the amounts of $63,750.00, plus interest.  Plaintiffs did not provide sufficient support evidencing how these sums were calculated or why that amount is reasonable.

**SO ORDERED** this 15th day of February, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE